HUBBARD, Appellant, vs. TOWN OF WILLIAMSTOWN, Respondent.

*September 22 — October 12, 1886.*

*Towns: Unauthorized contract by supervisors to purchase abutments of bridge: Ratification.*

At an annual town meeting a resolution was adopted authorizing the supervisors "to use their own judgment" in repairing the abutments of a bridge or moving it to another place. Subsequently at

a special town meeting a proposition of the owners of the abutments to sell them to the town was accepted; and a written contract for their sale was afterwards made between said owners and the supervisors, which recited that it was made pursuant to the action of such special town meeting. The proceedings of such special meeting were invalid, for lack of sufficient notice. The supervisors procured a bridge to be built upon the abutments, and town orders were issued to pay the builders thereof, and these facts were reported to and approved at the next annual town meeting. Shortly after the bridge was built, the abutments were washed out by reason of their defective construction. In an action against the town on the contract for the sale of the abutments, *held:*

(1) The resolution adopted at the first annual town meeting did not authorize the purchase of the abutments.

(2) The contract, being based solely on the invalid action of the special meeting, was itself invalid.

(3) There was no ratification of the contract by the town.

APPEAL from the Circuit Court for *Dodge* County.

The action was brought to recover the agreed price for two abutments for a bridge, alleged to have been sold by the plaintiff and one Lawrence to the defendant town. Lawrence assigned his interest in the claim to the plaintiff before the action was commenced. The complaint alleges that the abutments were purchased by the supervisors pursuant to a vote of a special town meeting held September 27, 1881, and that the town accepted a delivery of such abutments and built a bridge thereon pursuant to its agreement. The complaint shows affirmatively that no sufficient notice of such special town meeting was given.

The circuit court sustained a general demurrer to the complaint. On appeal, this court held that, for want of the notice required by the statute, the proceedings of the special town meeting were invalid and conferred no authority upon the supervisors to purchase the abutments. It was further held, however, that the allegation that the town accepted the abutments and built a bridge thereon pursuant to the agreement, should be construed to mean that

it ratified the void contract by its subsequent lawful and binding acts, and hence that the complaint stated a cause of action. 61 Wis. 397.

The cause was remitted to the circuit court, and on due leave the plaintiff amended his complaint by inserting an allegation that the annual town meeting of the defendant town for 1881, by vote, authorized the supervisors thereof to purchase such abutments, and that the same were purchased pursuant to such authority. The answer denies the facts constituting the alleged ratification, and also the alleged action of the annual town meeting in 1881. The claim in this action was duly presented to the town board for allowance in March, 1883, and was rejected.

At the conclusion of the testimony the court nonsuited the plaintiff, and judgment of nonsuit, with costs, was entered for the defendant. The plaintiff appeals from the judgment.

For the appellant there was a brief by *Eli & C. E. Hooker*, and oral argument by *Mr. C. E. Hooker*. To the point that the evidence showed an effectual ratification of the purchase of the abutments, they cited *Cooper v. Schwartz*, 40 Wis. 54; *Moss v. Rossie L. M. Co.* 5 Hill, 137; *Amherst Bank v. Root*, 2 Met. 534; *Middlesex H. & M. v. Davis*, 3 id. 133; *Morse v. Ryan*, 26 Wis. 362; *Peterson v. Mayor*, 17 N. Y. 449; *Proprietors of C. B. v. Gordon*, 1 Pick. 297; *Pickett v. School Dist.* 25 Wis. 551; *Veeder v. Lima*, 19 id. 292; *Houfe v. Fulton*, 34 id. 608; *Mills v. Gleason*, 11 id. 470; *Kneeland v. Gilman*, 24 id. 39; *Hooker v. Bank of Rochester*, 30 N. Y. 83; *Bass v. C. & N. W. R. Co.* 42 Wis. 654; *Crans v. Hunter*, 28 N. Y. 389; *Elwell v. Chamberlain*, 31 id. 611; *Am. Ins. Co. v. Oakley*, 9 Paige, 496; *Dunn v. Rector St. Andrew's Church*, 14 Johns. 117; Angell & A. on Corp. secs. 238, 240; *Hoyt v. Thompson's Ex'r*, 19 N. Y. 207, 218; 1 Dillon on Mun. Corp. sec. 285; *Sauerhering v. I. R. & M. R. Co.* 25 Wis. 447; *Edwards v. G. J. R. Co.* 7

Sim. 337; *Argenti v. San Francisco*, 16 Cal. 255; *Howe v. Keeler*, 27 Conn. 538; *Ross v. Madison*, 1 Ind. 281; *Bulkley v. D. F. Co.* 2 Conn. 256; *Abbot v. Hermon*, 7 Me. 118; *Bank of U. S. v. Dandridge*, 12 Wheat. 64; *Union Bank v. Ridgely*, 1 Har. & Gill, 426; *Bank of Columbia v. Patterson's Adm'r*, 7 Cranch, 299; *Comm'rs Knox Co. v. Aspinwall*, 21 How. 539; *Bissell v. Jeffersonville*, 24 id. 287; *Hayden v. Madison*, 7 Me. 79; *Maher v. Chicago*, 38 Ill. 266; *People ex rel. Alexander v. Swift*, 31 Cal. 26; *Blen v. B. R. & A. W. & M. Imp. Co.* 20 id. 602; *San Francisco Gas Co. v. San Francisco*, 9 id. 453; *Dubuque F. College v. Township*, 13 Iowa, 55; *Pres. of Bank of Metropolis v. Guttschlick*, 14 Pet. 19; *Gassett v. Andover*, 21 Vt. 343; *Lowe v. L. & N. W. R. Co.* 18 Q. B. 632; *S. C.* 14 Eng. L. & Eq. 18; *Keyser v. School Dist.* 35 N. H. 477; *DeGrave v. Monmouth*, 19 Eng. C. L. 300. That the electors at a town meeting may authorize the supervisors, or even a committee composed of electors who are not supervisors, to examine and, at their discretion, either repair or rebuild a bridge, see *Rockwood v. Woodford*, 25 Wis. 443. Power given to erect includes power to purchase a thing already erected. *Beaver Dam v. Frings*, 17 Wis. 398.

*E. S. Bragg*, for the respondent. [No brief on file.]

LYON, J. Unless the testimony tends to show that the contract for the purchase of the abutments was made by the supervisors pursuant to authority conferred upon them by the annual town meeting of the defendant town held in 1881, or, failing such testimony, unless it tends to prove a valid and effectual ratification by the town, by acceptance or otherwise, of the unauthorized purchase thereof by the supervisors, the nonsuit was right, and the judgment must stand.

1. Was the purchase made pursuant to authority conferred by such annual town meeting? The records of that

meeting fail to show any vote of the electors on the subject, but there is parol testimony tending to show that a resolution was adopted, although the vote was not recorded, authorizing the supervisors "to use their own judgment in repairing the abutments of the Kekoskee bridge or moving it to any other place." This refers to the abutments in question. Without deciding upon the competency of such testimony, it will be assumed that the evidence tends to show that the electors so voted. But that fact does not help the case of the plaintiff. The resolution confers no authority to purchase the abutments, and had it done so that act would not, under the circumstances, validate the contract of purchase. The plaintiff and his partner and assignor, Lawrence, made their proposition to sell the abutments to the town, to the special town meeting held in September, 1881.[1] That meeting accepted such proposition; and the written contract subsequently entered into between them and the supervisors (upon which this action is founded) expressly affirms that it was made pursuant to the action of such special town meeting. It thus appears that the supervisors did not exercise any discretion in the matter. In other words, they did not act, and the owners of the abutments did not understand they were acting, under any vote of the annual town meeting. It is perfectly clear and indisputable, therefore, that, whatever may have been the action of the annual town meeting in the premises, it was ignored by the parties, and the contract of purchase was made solely upon the authority attempted to be conferred upon the supervisors by the special town meeting. Failing such authority, the contract is invalid unless there was a subsequent effectual ratification of it.

2. Does the testimony tend to show such a ratification of the

---

[1] The annual town meeting was held, as required by law, in April, 1881.— REP.

contract by the town? The facts upon which the claim of ratification is predicated, are these: After the invalid contract for the purchase of the abutments was executed, the supervisors contracted with other parties to erect a bridge thereon. The bridge was erected. Town orders were issued to the builders for the contract price, as well as to others who worked on the bridge. The facts were reported to the next annual town meeting by the supervisors, and such report was approved by the electors. At least, there was no disapproval of the action of the supervisors. It does not appear that the town, at any legal town meeting, ever took action upon the subject of purchasing the abutments. Within a very few days after the bridge was placed in position, the abutments were washed out, not because of high water, but because of their defective construction. The bridge was saved; and presumably retained by the town.

So it appears that all the town did was to pay for what it saved from the wreck. We fail to discover in all this an acceptance of the abutments by the town, or any element of an effectual ratification of the invalid contract to purchase them. Suppose some city officer, without authority, should purchase for the city, by two independent contracts, a horse of A., and a wagon of B., and use the horse to haul the wagon in and about the business of the city. The horse dies, and afterwards the city pays for the wagon, and retains it. Could it be successfully maintained that the city thereby ratified the unauthorized purchase of the horse, and must pay for it? Of course not. We regard this case as involving the same principle. None of the cases cited on behalf of the plaintiff go the length of holding that the voluntary payment of one claim, under such circumstances, is a ratification of another claim, invalid in its inception.

Because the contract for the purchase of the abutments was invalid, and because the defendant town has never ac-

cepted the abutments or done any other act ratifying the invalid purchase, the nonsuit was right, and the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.