MEGARRY BROS.

v.

CITY OF ST. THOMAS.

No. 7444.

Supreme Court of North Dakota.

Sept. 2, 1954.

On Rehearing Nov. 18, 1954.

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiff and appellant.

M. J. Clayburgh, Grafton, for defendant and respondent.

MORRIS, Chief Justice.

Because of the unusual situation presented by this appeal we deem it necessary to set out the pleadings at some length. The plaintiff alleges in the complaint

### 2.

"That the City of Saint Thomas is a Municipal Corporation organized and existing under and by virtue of the laws of the State of North Dakota.

### 3.

"That between the fifteenth day of June, 1948, and the first day of January, 1949, the Plaintiff furnished material and equipment and furnished machinery and labor for the construction of paving in the City of Saint Thomas of the agreed value as follows:

| Item | Quantity | Unit | Unit Price | Total Amount |
|---|---|---|---|---|
| Excavation, street | 4,915 | C. Y. | $0.75 | $ 3,686.25 |
| Excavation, Inter. | 465 | C. Y. | 0.75 | 348.75 |
| Gravel, pit run | 5,462 | C. Y. | 2.15 | 11,743.30 |
| Pump and Housing | 1 | Ea. | — | 2,550.00 |
| Catch basins | 12 | Ea. | 130.00 | 1,560.00 |
| Manhole | 1 | Ea. | 175.00 | 175.00 |
| 18″ Perforated Pipe | 200 | l. f. | 3.75 | 750.00 |
| 10″ Perforated Pipe | 1,072 | l. f. | 2.80 | 3,001.60 |
| 8″ Perforated Pipe | 1,800 | l. f. | 2.50 | 4,500.00 |
| Rock Trenchfill | 560 | C. Y. | 3.50 | 1,960.00 |
| Gravel Trenchfill | 590 | C. Y. | 2.15 | 1,268.50 |
| Crushed Gravel Base | 2,045 | C. Y. | 2.90 | 5,930.50 |
| Bit, Surfacing, 1½″ | 10,528 | S. Y. | 0.50 | 5,264.00 |
| Bit, Surfacing, 2½″ | 8,273 | S. Y. | 0.75 | 6,204.75 |
| Prime Bit. | 6,260 | Gal. | 0.14 | 876.40 |
| Seal Bit. | 4,320 | Gal. | 0.15 | 648.00 |
| Sand for Seal | 170 | Ton | 5.00 | 850.00 |
| Force Account Work | | | | 1,071.65 |

"That said work and material was of the agreed value of Fifty Two Thousand Three Hundred Eighty Eight and 70/100 ($52,388.70) Dollars and was accepted by the Engineer for the City and certified to the City as of said value. That no part of said amount has been paid except the sum of Thirty Nine Thousand Seven Hundred Twenty Five and 75/100 ($39,725.75) Dollars leaving a balance due and owing of the sum of Twelve Thousand Six Hundred Sixty Two and 95/100 ($12,662.95) Dollars together with interest at the legal rates of the first day of January, 1949, to the date hereof.

### 4.

"That Plaintiff has made demand for said sum and that payment has been refused.

"Wherefore, Plaintiff prays for judgment against Defendant for the sum of Twelve Thousand Six Hundred Sixty Two and 95/100 ($12,662.95) Dollars together with Plaintiff's costs together with interest at the rate of 4% per annum from the first day of January, 1949, together with Plaintiff's costs and disbursements herein."

For its answer the defendant

### II

"Denies that the City of Saint Thomas has sufficient knowledge or information to form a belief as to the allegation contained in paragraph one of said complaint.

### III

"The City of Saint Thomas affirmatively alleges that between the approximate dates of the 15th day of June, 1948, and the 1st day of January, 1949, the plaintiff furnished materials and equipment and furnished machinery and labor for the construction of paving in the City of Saint Thomas and for the said materials, equipment, machinery and labor, the plaintiff has been paid in full and that no part thereof is due and owing.

"As and For a Further Affirmative Defense and Counterclaim To the Complaint of the Plaintiff, Defendant Respectfully Alleges and Shows to the Court the following:

### I.

"That the plaintiff negligently and in an unworkmanlike manner constructed the paving of main street between Hager Avenue and Cleland Avenue as to cause same to be unfit for general travel, requiring the City of Saint Thomas to reconstruct said paving to their damage of Two Thousand, Five Hundred and Fifteen ($2,515.00) Dollars.

### II.

"That the approaches to main street were constructed in such an unworkmanlike manner through the negligence of the plaintiff and his employees that proper drainage cannot be had without considerable fill and labor thereby damaging the City of Saint Thomas in the amount of Four Thousand, Five Hundred ($4,500.00) Dollars.

### III.

"That due to poor workmanship and the negligence of the plaintiff and his employees, the drainage pipe extending from Cleland Avenue to Moore Avenue on the west side of main street was so constructed and placed that it could not possibly carry water; that due to this act of negligence, it was necessary for the plaintiff and his employees to replace said drainage pipe at additional cost of labor and materials; that due to the necessity of removing said drainage pipes and replacing same, the structure of the highway within the city limits hereinbefore specified was so weakened that said portion of the road sunk causing a depression along the west side of the street; that to repair the sunken condition of the highway, it will be nec-

essary for the City of Saint Thomas to expend moneys in excess of Three Thousand, Five Hundred ($3,500.00) Dollars all of which is to defendant's damage.

"Wherefore, The defendant prays that the plaintiff's action be dismissed with costs and disbursements and the defendant further prays for Judgment against the plaintiff for the sum of Ten Thousand, Five Hundred and Fifteen ($10,515.00) Dollars, together with interest, costs and disbursements herein."

To the defendant's answer the plaintiff replied by a general denial.

The case was tried at length to a jury and at the close of all of the evidence both sides moved for a directed verdict. The court denied both motions and instructed the jury under the pleadings and the evidence, whereupon the jury returned the following verdict:

"We, the jury empanelled in the above entitled action, find for the defendant for the dismissal of the plaintiff's complaint and we find for the plaintiff for the dismissal of defendant's counter-claim."

The plaintiff moved in the alternative for a judgment notwithstanding the verdict or for a new trial. This motion was denied on October 27, 1953, and on that date judgment was entered dismissing plaintiff's action. The plaintiff appeals from the judgment and from the order denying its alternative motion.

The plaintiff specifies errors at law in the admission of evidence and in the court's instructions to the jury. It also challenges the sufficiency of the evidence to support the verdict.

We now turn to the evidence, from which we extract these important facts: At a special meeting June 8, 1948, the City Council of the City of Saint Thomas passed this resolution:

"that this Council has found and determined, and hereby declares, that the owners of less than a majority of the property liable to be specially assessed for the improvement which is to be made in paving district No. 1 have filed protests against the making of said improvement, and the time for filing such protests has expired, said date being the 17th day of May, 1948 and the protests filed are insufficient, and therefore the City and its governing body are authorized and empowered to cause said improvement to be made and to contract and levy and collect assessments therefor."

It appears that prior to this meeting of June 8, the city council had passed a resolution declaring it to be necessary and convenient and to the best interests of the city that a hard surface street be constructed within the limits of paving district number one. May 17 had been set as the date for making protests against the improvement. An engineer, Theodore Spriggs, had been employed and had prepared plans, specifications, and an estimate of the probable cost of the proposed improvement. Notice of the receipt of sealed bids based upon these plans and specifications had been published on April 15 and 22. The only bid received was that of the plaintiff. The city council at the special meeting of June 8 adopted the following resolution:

"Be it Resolved by the City Council of the City of Saint Thomas, North Dakota, that the bid submitted by McGerry Bros. in the amount of $39,725.75 for the construction of a paving project within the confines of Paving District No. One (1) and the furnishing of materials, labor and skill needed for said project, was the lowest and sole bid submitted and upon consultation with the City Engineer, Mr. T. F. Spriggs of Grand Forks, North Dakota, and with approval said bid is hereby and herein accepted and approved."

This meeting adjourned to meet on June 15 to consider the contract to be signed by Megarry Brothers.

On June 15, 1948, a construction contract was executed by Megarry Brothers

and the City of Saint Thomas, paragraph 1 of which reads as follows:

"That, for the considerations and payments hereinafter mentioned to be made by the party of the second part, the Contractor promises and agrees to furnish and deliver all the material and to do and perform all the work and labor required to be furnished and delivered, and to pay or cause to be paid as they become due, all claims for any work or labor performed, including that performed repairing machinery and equipment, or renting any motor power equipment of all kinds and machinery or furnishing any skill, hand tools or materials or insurance premiums or supplies for equipment, all as done and performed in and about the construction of the paving project known and referred to by the party of the second part as paving district No. One (1), in strict conformity with the provisions of this contract, and bond, proposal and the plans and specifications as approved by the City Council of the City of Saint Thomas, copies of which are on file with the party of the second part, and which said plans and specifications and proposal and bond are hereby made a part of this agreement as fully and to the same effect as if the same had been set forth in the body of this agreement."

The bond referred to in the construction contract was entered into in the sum of forty thousand dollars and contained this provision:

"The condition of this obligation is such that whereas, said principal has entered into a contract with the said City of Saint Thomas for the paving project within the confines of that district known as Paving District No. One (1), reference to which contract is hereby made as a part hereof: * *."

The proposal referred to in the contract and submitted by Megarry Brothers set forth unit prices for various items and the "approximate quantities" to be furnished and a total bid of $39,725.75.

As the work progressed changes were made in the plans which increased the amount of both materials and labor that entered into the completed project. The plaintiff contends that its bid was approximate and that it is entitled to be paid for all work and materials above the original estimate at unit prices. The defendant, on the other hand, contends that the additional work and materials furnished by the plaintiff were incidental to the project, were covered by the original lump sum bid, and that the plaintiff is entitled to no additional compensation therefor. The plaintiff strenuously contends that the additional work and material were furnished according to the agreed unit price, were accepted by the city engineer and by him certified to the city in a final estimate, and that the plaintiff is entitled to a judgment against the City of Saint Thomas for this agreed and certified value. The acceptance and certification are controverted by the city and was one of the issues submitted to the jury.

We are here presented with a unique and somewhat difficult situation. The plaintiff's complaint and the evidence submitted under it contain the seeds of destruction of plaintiff's cause of action. The plaintiff seeks a new trial. The point fatal to plaintiff's right of recovery has neither been pleaded nor in any manner presented in the court below. Yet, were we to grant either a judgment notwithstanding the verdict or a new trial as plaintiff requests, we would thus sanction the recovery of a judgment against a municipality contrary to express statutory provisions.

■■ Ordinarily questions not raised at the trial will not be considered on appeal, but to that rule there are certain exceptions. Where a pertinent statute has been overlooked resulting in plain error that is of public concern, this court will consider the error though it be not brought to our attention by either of the parties. Adley Express Co. v. Town of Darien, 125 Conn. 501, 7 A.2d 446; Magnolia Petroleum Co.

v. State, 175 Okl. 11, 52 P.2d 81; White v. McCoy Land Co., Mo.App., 101 S.W.2d 763; Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231; Lambert Pharmacal Co. v. Roberts Bros., 192 Or. 23, 233 P.2d 258; Crichfield v. Bermudez Asphalt Paving Co., 174 Ill. 466, 51 N.E. 552, 42 L.R.A. 347.

■ Section 130 of the North Dakota Constitution directs the legislative assembly to provide by the general law for the organization of municipal corporations. These municipal corporations when created pursuant to statute become agencies of the state and have only the powers expressly conferred upon them by the legislature or such as may be necessarily implied from the powers expressly granted. Fradet v. City of Southwest Fargo, N.D., 59 N.W.2d 871. Among legislative grants of power to cities is the power to create improvements by the special assessment method as set out in Chapter 40–22, NDRC 1943 and amendments thereto. It appears from the evidence in this case that the pavement involved was an improvement which the City of Saint Thomas sought to make pursuant to the provisions of Chapter 40–22, supra. Most of the provisions of this chapter had their origin in Chapter 62, SLND 1905. In Schieber v. Mohall, 66 N.D. 593, 268 N.W. 445, 453, we said:

"There is nothing plainer in the whole chapter than that the city is not to be held responsible generally for the cost of the improvement. The cost is to be paid by the property benefited, from a fund raised by taxation of said property, and from no other source. The city is not to be held liable generally. Not only is this the plain import of the chapter; but it must also be clear that if any portion of the cost, other than the part assigned to the city for intersections of streets, etc., were to become the general obligation of the city, then the taxpayers of the city would be saddled with the cost of improvements in the making of which they had no voice. Only the district benefited by the extension of sewers and waterworks is consulted. The city council

determines the necessity for the work and gives general notice; but it is only in case 'the owners of a majority of the property liable to be specially assessed for such proposed improvement' protest that the city council considers protest at all. The theory is that the only ones affected are those assessed for the benefits, and, therefore, they are the only ones concerned."

Turning now to our present statute, we find that Section 40–2236, NDRC 1943 provides:

"A contract let under the provisions of this chapter shall require the work to be done pursuant to the plans and specifications on file in the office of the city auditor or village clerk, as the case may be, subject to the approval of the engineer acting for the municipality, and shall provide further:

"1. That the governing body shall have the right to suspend the work at any time for improper construction and to relet the contract therefor or to order a reconstruction of the work as to any part thereof improperly done;

"2. The time within which the work shall be completed;

"3. The period of time for which the work shall be guarantied as to workmanship and materials;

"4. The fund from which the contract price is to be paid by the municipality;

"5. That the consideration expressed in the contract is payable only in warrants drawn on the fund described in the contract; and

"6. That the municipality assumes and incurs no general liability under such contract.

The engineer acting for the municipality shall supervise and inspect the work during its progress."

None of the provisions required by Section 40–2236, supra, except the date for

completion of the work, were inserted in the contract between Megarry Brothers and the City of Saint Thomas, yet it clearly appears that the city was attempting to proceed under the provisions of Chapter 40–22. The amount of the original bid, $39,725.75, has been paid to Megarry Brothers. This money presumably was raised by special assessments levied against the property benefited. Those assessments are now being collected from the property owners. There can be no question that the improvement was to be financed through special assessments. In fact, plaintiff's brief states:

"The procedural steps were taken as provided for improvement by special assessment and Plaintiff submitted the only bid which was accepted."

We now consider the problem of the effect of a contract for a special improvement in which the provisions of Section 40–2236, NDRC 1943 are omitted and the municipality promises to pay for the improvement in cash, as the plaintiff contends was the agreement here.

■ Persons entering into contractual relations with municipal corporations or their officers are chargeable with notice of the extent of and limitations upon their powers. Roberts v. City of Fargo, 10 N.D. 230, 86 N.W. 726; City and County of San Francisco v. Superior Court, Cal.App., 231 P.2d 583; Von Schmidt v. Widber, 105 Cal. 151, 38 P. 682; see also Bankers Trust & Savings Bank v. Anamoose, 51 N.D. 596, 200 N.W. 103; McQuillin, Municipal Corporations, 3rd Ed., Section 37.103.

■ The law in existence at the time the contract is made forms a part of the contract to the same extent as if it were expressly incorporated therein. State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118, 86 A.L.R. 1523; Williston on Contracts, Revised Edition, Section 615. This rule is applicable to contracts for public improvements made by municipalities. The ordinances and statutes must be treated as a part of the contract entered into between the municipality and the contractor.

City of Paducah v. Koller Plumbing Co., 219 Ky. 779, 294 S.W. 477. Section 40–2236, NDRC 1943 specifically requires that the contract state the fund from which the contract price is to be paid and that the municipality assumes and incurs no general liability. We therefore must read into the contract these statutory requirements. Accordingly we hold that the plaintiff when it entered into the contract agreed that the City of Saint Thomas would incur no general liability and that this agreement is fatal to the plaintiff's right to recover under the contract.

■ In support of its right to recover the plaintiff also argues that this is an action on implied contract for the recovery of the reasonable value of labor and materials furnished to the city and accepted by it. In support of its right to recover under this theory the plaintiff cites McGuire v. City of Rapid City, 6 Dak. 346, 43 N.W. 706, 5 L.R.A. 752, and Northwestern Sheet & Iron Works v. Sioux County, 76 N.D. 451, 36 N.W.2d 605. We are unable to read plaintiff's complaint as pleading an action on implied contract for reasonable value. But if we were, plaintiff still could not recover. The prohibition against general liability contained in Section 40–2236 is fatal to any recovery by the plaintiff upon contract, either express or implied. In McGuire v. City of Rapid City, supra, the distinction is made between a want of power and an irregular exercise of power on the part of a municipality and in the latter instance recovery was permitted. It was held that where the city had entered into a contract that it had power to make, it could not shield itself behind the defense that the power had been irregularly exercised. We applied that theory in Northwestern Sheet & Iron Works v. Sioux County, supra, wherein we analyzed our prior cases dealing with the subject in controversy.

"An implied contract must fall within the scope of corporate powers. The general rule is that if the express contract is one the municipality had no power to make, i. e., ultra vires in the strict sense of the

term, or if the municipality could not make an express contract of the kind sought to be enforced, the municipality cannot be held liable for the value of benefits received. A municipality is not required to compensate for benefits received under a void contract, where to do so would be tantamount to annulling a statute, or doing by indirection that which the municipality is not permitted to do directly." McQuillin, Municipal Corporations, Section 29.111; Williams v. Fargo, 63 N.D. 183, 247 N.W. 46.

For a discussion of "Liability of City if Contract Price is Payable from Assessment" see Municipal Corporations, Dillon, Fifth Edition, Section 827.

We can reach no other conclusion but that Section 40–2236, NDRC 1943 prohibits a municipality from assuming or incurring a general liability upon a contract for improvements made pursuant to Chapter 40–22, NDRC 1943 and that by virtue of the statute the exemption from liability became a part of the contract entered into between Megarry Brothers and the City of Saint Thomas. The plaintiff claims that a total liability of $52,388.70 was incurred on the part of the city. $39,725.75 has been paid by assessments levied against benefited property within the paving district. The city was prohibited from assuming or incurring any general liability under the contract. What the city is forbidden to do by express contract it cannot do indirectly by implied contract. The plaintiff is not entitled to recover judgment against the city for the unpaid balance in an action on contract, either express or implied. The jury returned a verdict dismissing plaintiff's action and the defendant's counterclaim. Judgment has been entered pursuant to the verdict. An alternative motion was denied by the trial court. The order and judgment appealed from are affirmed.

BURKE, SATHRE, JOHNSON and GRIMSON, JJ., concur.

### On Rehearing

■ We granted a rehearing in this case upon the petition of the appellant. The case was reargued and a supplemental brief filed in which the appellant calls our attention particularly to the case of Pine Tree Lumber Company v. City of Fargo, 12 N.D. 360, 96 N.W. 357, 360, from which it quotes a number of passages that seemingly support the right to recover against the city. However, an analysis of that case discloses that it is not in point. The Pine Tree Lumber Company brought an action against the City of Fargo to recover upon ten warrants drawn against the city paving accounts. The court analyzed the pertinent statutes as they then existed and said:

"As between the city and the parties with whom it contracted to furnish the labor and material and to pave its streets, the city had power to render itself generally liable, notwithstanding the cost of the improvement was to fall ultimately upon the owners of abutting property. The scheme of the statute was to enable the city to make the improvements enumerated in the statute, and to reimburse itself for the costs of the same through special assessments of property abutting upon, and theoretically, at least, benefited, to the extent of the assessments, by the improvements made. * * * There is nothing in the statute which imposes upon the person to whom the contract is let to pave the streets the requirement to look alone to the proceeds of the special assessments for his pay, or limiting his recovery to the funds realized therefrom."

At the session following the decision in Pine Tree Lumber Company v. City of Fargo, the legislature enacted Chapter 62, SLND 1905 providing a new charter for cities. Article 18 of that chapter dealt with sewers, paving and watermains. Section 149, which is a part of that article, prescribed in a general way what contracts entered into for work provided for in the act should contain and specifically stated:

"Each contract so entered into shall state the time on or before which such work must be completed, and must state from what fund the amount to be paid thereon by the city is to be paid, and

that the consideration of such contract is payable only in warrants drawn on such fund, and that such city assumes and incurs no general liability under such contract."

These requirements have continued to be the law of this state down to the present time and now form a part of Section 40–2236, NDRC 1943 which we have quoted in the main opinion. The statements in Pine Tree Lumber Company v. City of Fargo regarding the general liability of a city under a contract for special improvements are no longer applicable. We adhere to our former opinion.

GRIMSON, JOHNSON, SATHRE, and BURKE, JJ., concur.